UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK C. JAMES                                          CIVIL ACTION

VERSUS                                                 NO: 14-216

SAM WOODS, STEPHANIE                                   SECTION: "A" (2)
WELBORN, ET AL.


## ORDER

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 20)** filed by defendants Sam Woods and Stephanie Welborn. Plaintiff Mark C. James opposes the motion. The motion, noticed for submission on April 23, 2014, is before the Court on the briefs without oral argument.

The movants seek dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff does not state a "plausible" claim for relief. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

## I.    BACKGROUND

Plaintiff Mark C. James alleges that defendants Sam Woods and Stephanie Welborn instigated his eventual prosecution for aggravated incest solely for the purpose of gaining leverage in an ongoing custody dispute. (Rec. Doc. 9, FAC ¶¶ 1 & 2). James is suing defendants Woods and Welborn for malicious prosecution and intentional infliction of emotional distress under Louisiana law. James is also asserting a claim for alienation of affection under Mississippi law. James is a citizen of Louisiana. Woods and Welborn are citizens of Mississippi.[1]

Sam Woods and Ms. Tracy James divorced in 2005, and the two are the parents of JW

---

[1] James has also brought a negligence claim against the therapist (and her employer) who suggested that the matter be reported to law enforcement for prosecution and later testified against James. (Rec. Doc. 9, FAC ¶ 3). Those claims are not at issue in the instant motion.

and AGW. Woods and Tracy shared custody but the children lived with Tracy. (FAC ¶ 38). Mark James met and began to date Tracy in 2006 when she was going through a custody dispute with Woods. (*Id.* ¶ 36). James and Tracy married in May 2007. Woods later married Stephanie Welborn.

According to Mark James, when Woods learned that Tracy would move the children from Hattiesburg to Slidell, he immediately and unsuccessfully moved the court for modification of the extant custody agreement. (FAC ¶¶  39, 41, 44 ). After the trial, Sam was overheard saying "I am going to get that son of a [expletive] Mark James if it's the last thing I do." (*Id.* 42).

In May or June 2008 Woods started taking AGW to the Office of Child Protective Services in St. Tammany Parish. (FAC ¶ 45). According to the eventual allegations, James either looked under or put his fingers under AGW's diapers, which the eight-year old wore because of a bedwetting problem. (*Id.* ¶ 47). Woods and Welborn allegedly contacted numerous other agencies and experts when they could not get the cooperation that they sought. James contends that Woods and Welborn never mentioned anything about abuse during the summer of 2008 and never objected when AGW stayed at James' home. (FAC ¶¶ 54-59). AGW's allegations were at various times changed or recanted completely. (*Id.* ¶ 69).

Woods nonetheless met with a detective of the St. Tammany Parish Sheriff's Office on October 14, 2008, to initiate a criminal complaint against James for his touching AGW. (FAC ¶ 86). James contends that Woods and Welborn repeatedly contacted the Sherrif's Office in order to point them to the various counselors to which they had been sending AGW. (*Id.* ¶ 87). James alleges that Woods and Welborn "painted a picture of the onset of bedwetting and 'yeast infections' for the Sheriff's Office as coinciding with AGW's move to Slidell and time with [him]." (FAC ¶ 88). James contends that in doing so Woods and Welborn "purposefully

withheld clear medical documentation which showed AGW's history of bedwetting and urinary tract infections, a history which <u>far predated Mark's ever even meeting Tracy or her children</u>." (*Id.* ¶ 89) (emphasis in original).

On November 18, 2008, the New Orleans Police Department Fugitive Division arrested James at his place of employment. (FAC ¶ 96). Nearly five years later James was tried for two days in St. Tammany Parish on a single count of aggravated incest. He was found not guilty in February 2013, after the jury had deliberated for one hour. (*Id.* ¶¶ 99, 110, 111). Between the time of his arrest in 2008 and his trial in 2013, James lost his job of 27 years and he alleges that he was virtually unemployable notwithstanding his previously spotless criminal record. (FAC ¶ 102). Woods ultimately prevailed in his custody battle. (*Id.* ¶ 113). Tracy divorced James in September 2013. (*Id.* ¶ 117).

James filed the instant action against Woods, Welborn, and other defendants on January 28, 2014. Vis à vis Woods and Welborn, James asserts claims for malicious prosecution and intentional infliction of emotional distress under Louisiana law, and a claim for alienation of affection under Mississippi law. James seeks to recover punitive damages and attorney's fees under Mississippi law.

## II.   Defendants' Motion to Dismiss

Woods and Welborn argue that James does not state a claim for malicious prosecution because he cannot establish causation, *i.e.*, that their conduct was the sole cause of his criminal prosecution. Defendants point out that they had no involvement in the prosecutorial decision-making process, and that James was prosecuted following a criminal investigation. Defendants argue that the independent investigation broke the causal chain of events.

Woods and Welborn also argue that they are entitled to immunity under article 611 of the Louisiana Children's Code.

Defendants argue that issues of causation and immunity also bar James' intentional infliction of emotional distress claim. Further, they contend that the conduct alleged is not of the extreme and outrageous nature required to support a cause of action for intentional infliction of emotional distress.

Woods and Welborn argue that *Erie* and the appropriate application of conflict-of-laws preclude application of the Mississippi alienation of affection law to a Louisiana marriage.

Finally, Defendants argue that dismissal of the substantive causes of action on the foregoing bases negates the possibility of applying the Mississippi remedies of punitive damages and attorney fees to James' Louisiana causes of action.

## III.   DISCUSSION

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

### *Malicious Prosecution*

A claim for malicious prosecution comprises the following elements: 1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damage conforming to legal standards resulting to the plaintiff. *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984) (citing *Eusant v. Unity Indus. Life Ins.*, 196 So. 554, 556 (La. 1940); *Hibernia Nat'l Bank v. Bolleter*, 390 So. 2d 842, 843 (La. 1980)). The crucial determination regarding the probable cause element is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time he pressed charges. *Jones*, 448 So. 2d at 1272.

Defendants' arguments regarding causation lack merit in the context of a Rule 12(b)(6) motion. If Defendants' arguments regarding intervening cause were correct as a matter of law, then there would be no cause of action under Louisiana law for malicious prosecution. In the criminal context, a malicious prosecution claim requires the initiation of criminal proceedings, which may or may not include a full trial, that terminated favorably for the plaintiff. Investigations by law enforcement and findings of probable cause by grand juries are typically part of that process. Thus, the mere fact that law enforcement investigated Woods' and Welborn's allegations, and that a district attorney obtained a grand jury indictment, is not sufficient in and of itself to deprive James of a cause of action.

What Defendants' arguments fail to recognize is the concept of <u>fault</u> upon which

liability for malicious prosecution must be based. Thus, when the defendant had an honest and reasonable belief in the plaintiff's guilt at the time that he pressed charges, the plaintiff may very well have a problem demonstrating a lack of probable cause and under some circumstances that point may even be clear on the face of the complaint. But the allegations in James' complaint, which the Court accepts as true, do not support the inference that Woods and Welborn had an honest and reasonable belief that James was abusing AGW when they reported James to law enforcement. In fact, the crux of James' well-pleaded complaint is that the Defendants pursued criminal charges against him solely for the purpose of retribution and for obtaining leverage in an ongoing custody battle. The allegations outline significant circumstantial evidence that suggests that Defendants knew that James was not abusing AGW. And most significantly, James alleges that Defendants presented misleading medical evidence to the authorities in order to make James look guilty.

To be sure, when the facts come to light, James may not be able to prove that Defendants lacked probable cause. Likewise, James might not be able to prove that Defendants' fault, if any, permeated the entire criminal process from inception to trial. In other words, when the facts come to light, it might be clear that at some point during the five year ordeal the discretionary actions of law enforcement or the district attorney, untainted by any fault on Defendants' part, constituted an intervening cause. But even if that is the case, the result is not that James has no cause of action whatsoever because Louisiana law does not require sole causation. Rather the issue becomes one of the reach of damages—whether some fault on Defendants' part caused all of James' damages, in whole or in part, or whether some intervening cause served to truncate the tabulation of damages that are attributable to Defendants' fault. None of these issues are appropriate for a Rule 12(b)(6) disposition in this case.

Similarly, Woods' and Welborn's claim to immunity under Children's Code article 611

cannot be analyzed under Rule 12(b)(6). The statute immunizes "good faith" reports of abuse and does not apply to persons who make a report "known to be false" or "with reckless disregard for the truth of the report." La. Ch. Code art. 611(A)(1)(a), (B)(2). But in this case the allegation is not that Defendants simply made a good faith mistake when they reported a claim of sexual abuse that turned out to be unfounded. Rather, the claim is essentially that Woods and Welborn invented a claim for ill motives.

In sum, Defendants' arguments are not cognizable in the context of a Rule 12(b)(6) motion to dismiss. The motion to dismiss is therefore DENIED as to the malicious prosecution claim.

### *Intentional Infliction of Emotional Distress*

The basis for the tort of intentional infliction of emotional distress ("IIED") in Louisiana is Civil Code article 2315. *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1021 (La. 2000). The essential elements of the claim are: 1) intent to cause, 2) severe emotional distress by, 3) extreme and outrageous conduct. *Groff v. Southwest Beverage Co.*, 997 So .2d 782, 786 (La. App. 3rd Cir. 2008) (citing *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991)). It is not enough that the defendant has acted with intent which is tortuous, or that he maliciously  intended to inflict emotional distress. *Nicholas*, 765 So. 2d at 1022. Rather, liability requires conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.*

Essentially the claim in this case is that Defendants ruined James' life by falsely accusing him of aggravated incest, a horrible and despicable crime, for the sole purpose of retribution and leverage in a custody battle. Plaintiff's opposition states the point rhetorically yet well: If this does not state a claim for IIED in Louisiana then how much more egregious would the facts have to be? (Rec. Doc. 37, Opposition at 12).

In sum, Defendants' arguments are not cognizable in the context of a Rule 12(b)(6) motion to dismiss. The motion to dismiss is therefore DENIED as to the IIED claim.

### *Alienation of Affection*

It is undisputed that Louisiana law does not recognize a cause of action for alienation of affection. Mississippi does recognize such a cause of action. Plaintiff contends that for purposes of this cause of action Mississippi law should be applied to the Defendants because they reside in Mississippi and because some of their ill conduct occurred in that state.

Cases having contacts with other states are governed by Book IV of the Civil Code entitled Conflict of Laws. La. Civ. Code art. 14 (Multistate cases). Article 3515 of Book IV provides that an issue in a case having contacts with other states is governed by the state whose policies would be most seriously impaired if its law were not applied to that issue.

Civil claims for alienation of a spouse's affection have been soundly rejected and recognized as against the public policy of this state since the Louisiana Supreme Court's decision in *Moulin v. Monteleone*, 115 So. 447 (1927).[2] Although cited by neither party, the most relevant decision available is *Gaines v. Poindexter*, 155 F. Supp. 638 (W.D. La. 1957), which dealt with a Texas alienation of affection claim being pursued in a Louisiana federal court. The district judge in that case authored a scholarly Louisiana choice of law analysis that ultimately addressed the role of *Erie* when a federal court sitting in diversity adjudicates a state-created cause of action. *Id.* at 641 (citing *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938)). Simply, a federal court sitting in diversity should not entertain a non-federal cause

---

[2] Part of the reasoning supporting the decision in *Moulin* was that Louisiana did not recognize interference with a civil contract and marriage is at its base a civil contract. Of course several years later the Louisiana Supreme Court recognized a limited cause of action for interference with a contract in *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989). Attempts to retract *Moulin* based on *9 to 5 Fashions* have been soundly rejected. *See, e.g.*, *Greene v. Roy*, 604 So. 2d 1359, 1362 (La. App. 3rd Cir. 1992); *Butler v. Reeder*, 573 So. 2d 1159 (La. App. 5th Cir. 1991).

8

of action that the state courts of the forum would find unenforceable as a matter of public policy. *Id.* at 644.

James has not identified and the Court's own research has likewise failed to uncover a single decision in which a Louisiana court has allowed a claim for alienation of affection. Such a claim continues to be recognized by the courts of this state as against public policy and therefore unenforceable. And as *Gaines* implicitly recognizes, the enforceability *vel non* of the claim in a Louisiana court does not necessarily turn on how much of the tortuous conduct underlying the claim occurred in the foreign state.

In sum, the Court is persuaded that James' claim for alienation of affection under Mississippi law must be dismissed. Woods' and Welborn's motion is GRANTED as to this claim.

### *Punitive Damages/Attorney's Fees*

Defendants argue that dismissal of the substantive causes of action on the grounds of intervening causation and Children's Code article 611 negate the claim for punitive damages and attorney's fees under Mississippi law. The Court has already rejected, however, Defendants' motion as to these grounds.

Moreover, unlike a claim for alienation of affection, the remedy of punitive damages is not against Louisiana public policy. Civil Code article 3546 expressly authorizes Louisiana courts to award punitive damages when certain criteria are met such as when the place where the conduct occurred and the tortfeasor's domicile authorize an award of punitive damages. La. Civ. Code art. 3546(1). The domicile of the victim is not a pertinent factor under this article because punitive damages have more to do with the tortfeasor than with the victim. *Id.* cmt. b.

Plaintiff contends that Defendants are domiciled in Mississippi and that some of the injurious conduct occurred in that state. The Court cannot reject Plaintiff's contentions at

9

this stage of the proceeding.

In sum, Defendants' arguments are not cognizable in the context of a Rule 12(b)(6) motion to dismiss. The motion to dismiss is therefore DENIED as to the punitive damages claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 20)** filed by defendants Sam Woods and Stephanie Welborn is **GRANTED IN PART AND DENIED IN PART** as explained above.

May 9, 2014

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE