UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK C. JAMES                                                    CIVIL ACTION

VERSUS                                                           NO: 14-216

SAM WOODS, STEPHANIE                                             SECTION: "A" (2)
WELBORN, ET AL.

# ORDER

The following motion is before the Court: **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 30)** filed by defendants Shan'Terrica Barnes and The Shafer Center for Crisis Intervention. Plaintiff Mark C. James opposes the motion. The motion, noticed for submission on June 18, 2014, is before the Court on the briefs without oral argument.

The movants seek dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that they are not subject to personal jurisdiction in a Louisiana court. For the reasons that follow, the motion is GRANTED.

## I.   BACKGROUND

Plaintiff Mark C. James alleges that defendants Sam Woods and Stephanie Welborn instigated his eventual prosecution for aggravated incest solely for the purpose of gaining leverage in an ongoing custody dispute. (Rec. Doc. 9, FAC ¶¶ 1 & 2). James is suing defendants Woods and Welborn for malicious prosecution and intentional infliction of emotional distress under Louisiana law.

James has also brought a negligence claim against Shan'Terrica Barnes, the therapist who suggested that the matter be reported to law enforcement for prosecution and later testified against James, (Rec. Doc. 9, FAC ¶ 3), and The Shafer Center for Crisis Intervention, Barnes's employer. Barnes and Shafer Center are Mississippi citizens. (FAC ¶¶ 8, 9)

Sam Woods and Ms. Tracy James divorced in 2005, and the two are the parents of JW and AGW. Woods and Tracy shared custody but the children lived with Tracy. (FAC ¶ 38). Mark James met and began to date Tracy in 2006 when she was going through a custody dispute with Woods. (*Id.* ¶ 36). James and Tracy married in May 2007. Woods later married Stephanie Welborn.

According to Mark James, when Woods learned that Tracy would move the children from Hattiesburg to Slidell, he immediately and unsuccessfully moved the court for modification of the extant custody agreement. (FAC ¶¶ 39, 41, 44 ). After the trial, Sam was overheard saying "I am going to get that son of a [expletive] Mark James if it's the last thing I do." (*Id.* ¶ 42).

In May or June 2008 Woods started taking AGW to the Office of Child Protective Services in St. Tammany Parish. (FAC ¶ 45). According to the eventual allegations, James either looked under or put his fingers under AGW's diapers, which the eight-year old wore because of a bedwetting problem. (*Id.* ¶ 47). Woods and Welborn allegedly contacted numerous other agencies and experts when they could not get the cooperation that they sought. James contends that Woods and Welborn never mentioned anything about abuse during the summer of 2008 and never objected when AGW stayed at James' home. (FAC ¶¶ 54-59). AGW's allegations were at various times changed or recanted completely. (*Id.* ¶ 69).

Woods nonetheless met with a detective of the St. Tammany Parish Sheriff's Office on October 14, 2008, to initiate a criminal complaint against James for his touching AGW. (FAC ¶ 86). James contends that Woods and Welborn repeatedly contacted the Sheriff's Office in order to point them to the various counselors to which they had been sending AGW. (*Id.* ¶ 87). James alleges that Woods and Welborn "painted a picture of the onset of bedwetting and 'yeast infections' for the Sheriff's Office as coinciding with AGW's move to Slidell and time

2

with [him]." (FAC ¶ 88). James contends that in doing so Woods and Welborn "purposefully withheld clear medical documentation which showed AGW's history of bedwetting and urinary tract infections, a history which <u>far predated Mark's ever even meeting Tracy or her children</u>." (*Id.* ¶ 89) (emphasis in original).

In August 2008 Woods and Welborn began taking AGW to the Shafer Center to discuss the abuse allegations. (FAC ¶ 76). In 2008 defendant Barnes was a "play therapist" employed at the Shafer Center and she saw AGW and/or her parents roughly 16 times. (*Id.* ¶¶ 77-80). All meetings with Barnes took place at the Shafer Center in Mississippi. (*Id.* ¶ 85).

On November 18, 2008, the New Orleans Police Department Fugitive Division arrested James at his place of employment. (FAC ¶ 96). Nearly five years later James was tried for two days in St. Tammany Parish on a single count of aggravated incest. He was found not guilty in February 2013, after the jury had deliberated for one hour. (*Id.* ¶¶ 99, 110, 111). Between the time of his arrest in 2008 and his trial in 2013, James lost his job of 27 years and he alleges that he was virtually unemployable notwithstanding his previously spotless criminal record. (FAC ¶ 102). Woods ultimately prevailed in his custody battle. (*Id.* ¶ 113). Tracy divorced James in September 2013. (*Id.* ¶ 117).

James filed the instant action against Woods, Welborn, and other defendants on January 28, 2014. Vis à vis Woods and Welborn, James asserts claims for malicious prosecution and intentional infliction of emotional distress under Louisiana law, and a claim for alienation of affection under Mississippi law. James seeks to recover punitive damages and attorney's fees under Mississippi law.

James does not allege that Barnes was part of Woods' and Welborn's alleged scheme to bring false abuse charges against him. Rather, the claim against Barnes is for negligence. The crux of the claim against Barnes is that she should have known that the abuse allegations against James were specious in light of the surrounding circumstances. (FAC ¶¶ 103-109).

## II.  DEFENDANTS' MOTION TO DISMISS

Barnes and Shafer Center contend that they are not subject to general personal jurisdiction in Louisiana, and that their contacts with Louisiana for purposes of this action do not satisfy the requirements for specific personal jurisdiction. Barnes points out that all of the meetings with AGW and her parents occurred in Mississippi, and Barnes' sole contact with Louisiana was when she appeared to testify in James' criminal case pursuant to a subpoena from the State.

In their Reply, Defendants further assert that they are entitled to immunity under both Louisiana and Mississippi law.

Plaintiff argues that specific jurisdiction over Barnes is appropriate in light of her participation in the St. Tammany Parish district attorney's criminal investigation and in light of the testimony that Barnes provided in a Louisiana courtroom. James complains that Barnes only produced what was subpoenaed for trial and that she failed to adequately support her conclusions. Plaintiff contends that if these aspects of Barnes' Louisiana conduct are insufficient to confer jurisdiction on a Louisiana court then the Court should apply the effects test employed in *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628-30 (5th Cir. 1999).[1]

## III.  DISCUSSION

A district court sitting in diversity may exercise personal jurisdiction over a defendant to the extent permitted by state law. *Choice Helathcare, Inc. v. Kaiser Found. Heath Plan*, 615 F.3d 364, 367 (5th Cir. 2010) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)). The Louisiana long-arm statute authorizes the

---

[1] Plaintiff seems to recognize that specific personal jurisdiction does not apply to the claims asserted against Shafer Center directly. (Rec. Doc. 42 at 12). Besides Barnes' activities, which the Court rejects as a basis for specific jurisdiction, Plaintiff does not suggest that Shafer Center has maintained any type of continuous and systematic contacts with the state of Louisiana.

4

exercise of personal jurisdiction to the limits of due process. *Id.* The exercise of personal jurisdiction comports with due process where 1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and 2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

  The "minimum contacts" prong of the two-part test may be further subdivided into contacts that give rise to "general" personal jurisdiction and "specific" personal jurisdiction.[2] *Choice Healthcare*, 615 F.3d at 368. The court may exercise specific personal jurisdiction where a "nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Walk Haydel*, 517 F.3d at 243). The first element applies when the nonresident defendant purposefully avails himself of the privileges of conducting activities in the forum state. *Id.* (citing *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or the unilateral activity of another person or third party. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The plaintiff must make a prima facie showing of jurisdiction over a nonresident. *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

  It is undisputed that the only Louisiana contact or activity by Barnes giving rise to the claims against her occurred when she complied with a subpoena to testify in James' criminal trial. (Rec. Doc. 30-2, Barnes Affidavit). The Court holds that this contact does not constitute

---

  [2] Plaintiff does not contend that general personal jurisdiction, which requires "continuous and systematic" contacts with the forum state, applies in this case.

"purposeful availment" because Barnes acted in compliance with a trial subpoena. Other courts have recognized that a nonresident's compliance with a subpoena issued as part of a criminal investigation does not constitute "purposeful availment." *See, e.g., Claro v. Mason*, No. H-06-2398, 2007 WL 654609 (S.D. Tex. Feb. 27, 2007). Moreover, under Louisiana law Barnes is entitled to absolute witness immunity from a civil suit on the facts alleged. *See Marrogi v. Howard*, 805 So. 2d 1118 (La. 2002). Thus, even if Barnes' compliance with the trial subpoena could somehow be construed as purposeful availment, Barnes could not have reasonably anticipated being haled into a Louisiana court to defend a civil suit arising out of conduct for which she is absolutely immune.[3]

The remainder of Barnes' contacts with the forum, which are described generally as her participation in the St. Tammany Parish criminal investigation, occurred in Mississippi where Barnes is domiciled. Simply participating in the criminal investigation or cooperating with St. Tammany law enforcement is not sufficient to confer jurisdiction in Louisiana, and the *Calder* effects doctrine that Plaintiff alludes to cannot overcome that obstacle.[4] Other courts have recognized that a malicious prosecution plaintiff cannot base personal jurisdiction over a nonresident defendant on communications to law-enforcement agents in the forum state. *Claro*, 2011 WL 654609, at *11 (citing *Lott v. Burning Tree Club, Inc.*, 516 F. Supp. 913, 917 (D.D.C. 1980); *Glacier Refrig. Serv., Inc. v. Am. Transp. Inc.*, 467 F. Supp. 1104, 1107 (E.D.N.Y. 1979)). Moreover, both Louisiana law and Mississippi law provide immunity to individuals like Barnes who might otherwise decline to report suspected cases of

---

[3] Under Louisiana law absolute witness immunity will attach so long as the testimony given is pertinent and material. *Marrogi*, 805 So. 2d at 1126. The allegation in this case is that Barnes' conclusions were unfounded and unsupported. Nothing in the allegations or the record suggests that her testimony was not pertinent and material to the criminal case.

[4] *Calder v. Jones*, 465 U.S. 783 (1984).

child abuse in order to avoid potential exposure in a civil suit.[5] *See* La. Ch. Code art. 611; Miss. Code Ann. § 43-21-355. As with her appearance at the criminal trial, Barnes could not have reasonably anticipated being haled into a Louisiana court to defend a civil suit arising out of conduct for which both Louisiana law and Mississippi law confer immunity.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 30)** filed by defendants Shan'Terrica Barnes and The Shafer Center for Crisis Intervention is **GRANTED**. The complaint is **DISMISSED** as to these defendants.

July 14, 2014

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[5] To the extent that the negligence claims against Barnes are even actionable under Louisiana law, nothing in the pleadings suggests that any of exceptions to the immunity statutes would apply in this case.