UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK C. JAMES | CIVIL ACTION |
| VERSUS | NO: 14-216 |
| SAM WOODS, STEPHANIE WELBORN, ET AL. | SECTION: "A" (2) |

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 82 \*SEALED\*)** filed by defendants Sam Woods and Stephanie Welborn. Plaintiff Mark C. James opposes the motion. The motion, submitted for consideration on April 5, 2017, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.[1]

## I. BACKGROUND[2]

Plaintiff Mark C. James alleges that defendants Sam Woods and Stephanie Welborn instigated his eventual prosecution for aggravated incest solely for the purpose of gaining leverage in an ongoing custody dispute. (Rec. Doc. 9, FAC ¶¶ 1 & 2). James is suing defendants Woods and Welborn for malicious prosecution and intentional infliction of emotional distress under Louisiana law. James is a citizen of Louisiana.

---

[1] The Court allowed the parties to file their submissions under seal in order to allay their concerns pertaining to the protective order entered in this case. But this case is not a sealed matter and the Court has determined that this Order and Reasons need not be filed under seal.

[2] The factual background is taken solely from Plaintiff's pleadings. No party should construe the factual background as an indication that the Court considers the recited allegations proven (or not proven) by the evidence of record. The sufficiency of the record evidence in light of the allegations is discussed elsewhere in the opinion.

Page 1 of 14

Woods and Welborn are citizens of Mississippi.

Sam Woods and Ms. Tracy James divorced in 2005, and the two are the parents of AGW. Woods and Tracy shared custody but AGW lived with Tracy. (FAC ¶ 38). Mark James met and began to date Tracy in 2006 when she was going through a custody dispute with Woods. (*Id.* ¶ 36). James and Tracy married in May 2007. Woods later married Stephanie Welborn.

According to Mark James, when Woods learned that Tracy would move the children from Hattiesburg to Slidell, he immediately and unsuccessfully moved the court for modification of the extant custody agreement. (FAC ¶¶ 39, 41, 44 ). After the custody hearing, Sam was overheard saying "I am going to get that son of a [expletive] Mark James if it's the last thing I do." (*Id.* 42).

In May or June 2008 Woods started taking AGW to the Office of Child Protective Services in St. Tammany Parish. (FAC ¶ 45). According to the allegations, James either looked under or put his fingers under AGW's diapers, which the eight-year old wore because of a bedwetting problem. (*Id.* ¶ 47). Woods and Welborn allegedly contacted numerous other agencies and experts when they could not get the cooperation that they sought. James contends that Woods and Welborn never mentioned anything about abuse during the summer of 2008 and never objected when AGW stayed at James's home. (FAC ¶¶ 54-59). According to James, AGW's allegations were at various times changed or recanted completely. (*Id.* ¶ 69).

Woods nonetheless met with a detective of the St. Tammany Parish Sheriff's Office on October 14, 2008, to initiate a criminal complaint against James for his touching AGW. (FAC ¶ 86). James contends that Woods and Welborn repeatedly

contacted the Sheriff's Office in order to point them to the various counselors to which they had been sending AGW. (*Id.* ¶ 87). James alleges that Woods and Welborn "painted a picture of the onset of bedwetting and 'yeast infections' for the Sheriff's Office as coinciding with AGW's move to Slidell and time with [him]." (FAC ¶ 88). James contends that in doing so Woods and Welborn "purposefully withheld clear medical documentation which showed AGW's history of bedwetting and urinary tract infections, a history which <u>far predated Mark's ever even meeting Tracy or her children</u>." (*Id.* ¶ 89) (emphasis in original).

On November 18, 2008, the New Orleans Police Department Fugitive Division arrested James at his place of employment. (FAC ¶ 96). Nearly five years later James was tried for two days in St. Tammany Parish on a single count of aggravated incest. He was found not guilty in February 2013, after the jury had deliberated for one hour. (*Id.* ¶¶ 99, 110, 111). Between the time of his arrest in 2008 and his trial in 2013, James lost his job of 27 years and he alleges that he was virtually unemployable notwithstanding his previously spotless criminal record. (FAC ¶ 102). Woods ultimately prevailed in his custody battle. (*Id.* ¶ 113). Tracy divorced James in September 2013. (*Id.* ¶ 117).

James filed the instant action against Woods, Welborn, and other defendants on January 28, 2014. Vis à vis Woods and Welborn, James asserts claims for malicious prosecution and intentional infliction of emotional distress under Louisiana law. James seeks to recover punitive damages and attorney's fees under Mississippi law.[3]

---

[3] The Court previously dismissed James's claim for alienation of affection under Mississippi law. (Rec. Doc. 40). The Court also dismissed James's negligence claim against the

Woods and Welborn, the only defendants remaining before this Court, now move for summary judgment on all claims. A jury trial in this matter is scheduled for August 21, 2017.

## II. DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places

---

non-resident therapist (and her employer) who suggested that the matter be reported to law enforcement, and who later testified at James's criminal trial. (Rec. Doc. 46).

the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### *Malicious Prosecution*

Defendants move for summary judgment arguing that James cannot prove certain essential elements of his claim for malicious prosecution. Further, Defendants contend that Louisiana Children's Code article 611 immunizes them from suit for all of the claims in this lawsuit, including malicious prosecution.

Malicious prosecution is an intentional tort.[4] *Lemoine v. Wolfe*, 168 So. 3d 362, 367 (2015). A claim for malicious prosecution comprises the following elements: 1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damage conforming to legal standards resulting to the plaintiff. *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984) (citing *Eusant v. Unity Indus. Life Ins.*, 196 So. 554, 556 (La. 1940); *Hibernia Nat'l Bank*

---

[4] In their motion for summary judgment, Defendants take a collective approach to their conduct and do not suggest that one of them may be less culpable than the other and therefore entitled to summary judgment even if the other is not. But given that malicious prosecution is an intentional tort, and given that James has alleged solidary liability under Louisiana law, *see* La. Civ. Code art. 2324(A) (conspiring with another person to commit an intentional or willful act), the Court discerns no deficiency in the way that Defendants have structured their arguments.

*v. Bolleter*, 390 So. 2d 842, 843 (La. 1980)). The limitations on the tort reflect a careful balance between two important societal interests: the right of all persons to be protected when acting in good faith on reasonable grounds in commencing a criminal proceeding, and the right of an individual to seek redress for the malicious and unwarranted employment of the judicial process against him. *Lemoine*, 168 So. 3d at 367 (citing *Miller v. East Baton Rouge Parish Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987); *Robinson v. Goudchaux's*, 307 So. 2d 287, 291 (La. 1975)). Never favored in our law, a malicious prosecution action must clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent. *LeBlanc v. Pynes*, 69 So. 3d 1273,1279 (La. App. 2nd Cir. 2011) (citing *Johnson v. Pearce*, 313 So. 2d 812 (La. 1975)).

Defendants contend that James will not be able to meet his burden of proof at trial as to elements (2) (legal causation), (4) (probable cause), and (5) (malice) of the malicious prosecution claim.

The Court begins its analysis of the malicious prosecution claim with the fourth element of the cause of action—probable cause. The probable cause element is the appropriate starting point because the criminal case against James grew out of Defendants' initial decision to contact the police regarding AGW's allegations as to James's conduct. The probable cause element tests whether Defendants were justified in going to the police in light of AGW's allegations.

The element of probable cause focuses on the present defendant's mindset in instituting the original action against the plaintiff. *LeBlanc*, 69 So. 3d at 1282. Probable cause does not depend merely upon the actual facts in the case, but upon the

defendant's honest belief of the facts when making charges against the plaintiff. *Plessy v. Hayes Motor Co.*, 742 So. 2d 934, 939 (La. App. 2nd Cir. 1999) (citing *Craig v. Carter*, 718 So. 2d 1068 (La. App. 2nd Cir. 1998)); *Carter v. Catfish Cabin*, 316 So. 2d 517 (La. App. 2nd Cir. 1975)). The crucial determination is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time the charges were pressed. *Id.*; *Jones*, 448 So. 2d at 1272. This probable cause analysis must be distinguished from the probable cause analysis applicable to the law enforcement officials who actually effect the plaintiff's arrest based on the complainant/tortfeasor's report.[5] *LeBlanc,* 69 So. 3d at 1282.

According to Welborn and Woods, AGW first approached Welborn about James's conduct. Welborn testified that AGW first reported "poking" and tickling that made her uncomfortable. AGW later claimed that James had looked down her pull-ups. Ultimately, AGW claimed that James had touched her vagina inside of her clothing. Welborn told Woods about AGW's assertions, and Woods instructed AGW to tell her mother, Tracy James. AGW spoke to her mother without Woods or Welborn being present. Tracy slept with AGW that night and then contacted Woods to tell him that she was sending AGW to his house while she made arrangements to move back to Mississippi. Tracy left Mark

---

[5] The Court notes that Louisiana law recognizes a presumption of lack of probable cause and malice when the criminal charges are dismissed in their infancy prior to trial. *See Craig*, 718 So. 2d at 1071 n.1 (citing *Carter v. Catfish Cabin*, 316 So. 2d 517, 523 (La. Ct. App. 1975); *Robinson v. Rhodes*, 300 So. 2d 249, 251 (La. Ct. App. 1974)). That presumption does not apply in this case because James's case was taken to trial by the district attorney. Moreover, James does not benefit from any favorable presumptions based on his acquittal at trial. Even subsequent proof of complete innocence is not evidence of want of probable cause. *Graham v. Inter. Elec. Co.*, 127 So. 879, 880 (La. 1930); *Washington v. Lane Cotton Mills Co.*, 98 So. 416, 416 (1923); *Sundmaker v. Gaudet*, 37 So. 865 (La. 1905).

James without telling him why she was leaving and she testified that she did so in order to protect AGW. (Defendants' Exhibit 6, trial transcript at 57). Tracy avoided speaking to James for about three weeks when she finally told him what AGW had said.

The Court is persuaded that James cannot create an issue of fact as to probable cause. At the outset, the Court notes that no one disputes that AGW approached Welborn in the summer of 2008 to report the conduct that ultimately led to James's prosecution for aggravated incest. In fact, although not probative of the probable cause determination when Defendants went to law enforcement in 2008, AGW has never recanted those accusations. AGW executed an affidavit in December 2015 (at the age of 15) reaffirming the allegations that she originally made against James in 2008. (Defendants' Exhibit 1, AGW affidavit). The record is devoid of anything to suggest that Defendants coached AGW to make up false allegations against James. Even if AGW has been lying all of these years, nothing suggests that Defendants played a role in inventing the accusations against James or that they had any objective reasons to suspect that she was lying. That Woods and Tracy were involved in an acrimonious custody dispute is insufficient in and of itself to create an issue of fact as to probable cause.

Moreover, the record does not support the inference that Woods and Welborn were reckless or overly eager in approaching law enforcement. When AGW first complained about the "poking" Defendants did nothing because they just assumed that it was innocuous conduct. (Defendants' Exhibit 3, Woods deposition at 47). According to Woods, it was after the allegation of looking in AGW's diaper that Defendants first contacted the Shafer Center and Mississippi DHS, not the police, for guidance. (*Id.* at

47). According to Shan'Terrica Barnes, who was employed at Shafer Center at the time and ultimately conducted sixteen counseling session with the family, she told Woods that the Center could not help him until after he had contacted law enforcement about the allegations. (Defendants' Exhibit 6, trial transcript at 121). Defendants then contacted the St. Tammany Parish Sheriff's Office because the conduct had occurred in Louisiana.

The Court finds nothing unreasonable or questionable under the circumstances in Defendants' ultimate decision to contact law enforcement in light of AGW's accusations. Woods was faced with an eight-year-old daughter who was making claims of being molested by a step-parent. As lay persons Defendants may not have known whether or not the conduct was sufficient to rise to the level of a criminal act but they are not prosecutors or judges nor are they criminal investigators. Defendants were not required to conduct their own criminal investigation before going to the police.

In fact, given AGW's claims and what appeared to be the escalating nature of the offending conduct, Defendants were not required to sit back and do nothing for fear of being sued civilly by James. When child abuse is suspected, Louisiana Children's Code article 611 confers immunity in such a way as to err on the side of protecting children to the detriment of a potentially innocent individual. Louisiana Children's Code article 611 states in relevant part that "[n]o cause of action shall exist against any . . . [p]erson who in good faith makes a report, cooperates in any investigation arising as a result of such report, or participates in judicial proceedings under the provisions of this Chapter." La. Ch. Code art. 611 (A)(1)(a). "This immunity shall not be extended to . . . [a]ny person who makes a report known to be false or with reckless disregard for the truth of the

report." *Id.* § 611(B)(2). Good faith is presumed and the plaintiff has the burden of establishing the facts necessary to defeat statutory immunity. *Vincent v. Milligan*, 916 So. 2d 238, 242 (La. App. 1st Cir. 2005) (citing *Lambert v. Riverboat Gaming Enf. Div.*, 706 So. 2d 172, 175 (La. App. 1st Cir. 1997); *Kyle v. Civ. Serv. Comm'n*, 588 so. 2d 1154, 1158-60 (La. App. 1st Cir. 1991); *Corley v. Village of Florien*, 889 So. 2d 364 (La. App 3rd Cir. 2004)). When intent is disputed in a civil action, proof of intent or state of mind is rarely established as a fact by direct evidence, but may be inferred from the facts regarding the individual's actions or other circumstances. *S.G. v. City of Monroe*, 843 So. 2d 657, 662 (La. App. 2nd Cir. 2003) (citing *Schmidt v. Blue Cross & Blue Shield of La., Inc.*, 769 So. 2d 179 (La. App. 2nd Cir. 2000); *Ledet v. Burgess*, 632 So. 2d 1185 (La. App. 5th Cir. 1994); *State v. Cousan*, 684 So. 2d 382 (La. 1996); La. R.S. § 14:10). Direct evidence of intent comes from the actor himself, who can admit or deny the alleged state of mind. *Id.*

The Court is persuaded that this case falls squarely within the immunity provided by Louisiana Children's Code article 611.

James's position in opposing summary judgment is that there is a genuine dispute about whether Defendants actually believed that AGW was touched at all when they contacted the police. This argument strikes at both the probable cause element of the malicious prosecution claim and the good faith component of article 611. In support of his contention that Defendants didn't really believe AGW, James points out that Defendants did not contact law enforcement right away and they allowed AGW to return to James's household even after she reported inappropriate conduct. James suggests that summary judgment cannot be granted as to probable cause (or malice) or good

faith because it involves a state of mind determination that only a jury can make.

James's focus on whether Defendants subjectively believed what AGW was saying to them misses the mark. Assuming arguendo that Defendants did question in their own minds whether AGW was being truthful about James's conduct, AGW was describing conduct to them that was potentially criminal in nature, and Defendants contacted the police to report what AGW had told them. The police department then took over the investigation to determine whether probable cause existed to believe that a crime was committed. This is the purview of law enforcement, not that of private citizens. This case does not present a scenario where the surrounding circumstances made it objectively unreasonable or reckless for Defendants to believe what AGW was saying. And even though Tracy was supportive of James when she testified at his criminal trial, she admitted that when AGW told her about what James had done to her, she slept in AGW's bed that night and moved out the next day without even talking to James. Objectively speaking, it would seem that Tracy, who was the person closest to James, credited AGW's statements at the time. Defendants, who hardly knew James, were entitled to do no less.

Simply, Defendants do not bear the burden of proof as to their good faith and they do not have to prove that they had probable cause to contact the police. Rather, James bears the burden of proof to establish lack of probable cause for his malicious prosecution claim and to rebut the presumption of good faith implicit in article 611. James cannot meet his burden.

Even though James's malicious prosecution claim fails on the probable cause element, and the applicability of Louisiana Children's Code article 611 deprives James

of any civil recourse against Defendants, the Court is also persuaded that James has failed to create an issue of fact as to legal causation for his prosecution by the district attorney. After Woods contacted the police, AGW was interviewed without James and Welborn being present and she persisted in her accusations. According to Woods and Welborn, after the initial meeting with the St. Tammany detectives, Defendants initiated no further contact with law enforcement or the district attorney's office but rather only responded to inquiries when contacted by law enforcement. Nothing in the record refutes those claims. Apparently the police detectives and counselors (and perhaps the district attorney) who interviewed AGW without influence from Defendants discerned veracity in her statements. The district attorney made the decision to bring the case before the grand jury and the grand jury indicted James. The district attorney, in the exercise of his prosecutorial discretion, brought the case to trial.

Contrary to James's suggestion, the record does not allow for the inference that the criminal investigation and prosecution were tainted by either fabricated evidence or the misrepresentation of facts to the police. James's entire argument in this vein is built on hearsay within hearsay—a narrative (hearsay) in a police report (hearsay) that suggests that Welborn had indicated early on that AGW's bedwetting problems began after she started staying at James's house. But Welborn denies having told the police that the bedwetting problems started with visits to James's house and no witness, including the author of the police narrative, has contradicted her on this point—either at the criminal trial or in this litigation. James cannot create an issue of fact by relying on

inadmissible evidence.[6]

In sum, the district attorney obviously believed that the victim's testimony was sufficient evidence of criminal conduct to move forward with the case against James. The record does not allow for the inference that any tortious conduct by Defendants caused the district attorney to charge James and to prosecute him. Because James cannot create an issue of fact as to probable cause and legal causation, Defendants are entitled to summary judgment on the malicious prosecution claim.

### *Intentional Infliction of Emotional Distress (IIED)*

The essential elements of the claim are: 1) intent to cause, 2) severe emotional distress by, 3) extreme and outrageous conduct. *Groff v. Southwest Beverage Co.*, 997 So .2d 782, 786 (La. App. 3rd Cir. 2008) (citing *White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991)). It is not enough that the defendant has acted with intent which is tortuous, or that he maliciously intended to inflict emotional distress. *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1022 (La. 2000). Rather, liability requires conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.*

Defendants are entitled to judgment as a matter of law on James's IIED claim. James has failed to demonstrate extreme and outrageous conduct by Defendants. Further, Louisiana Children's Code article 611 bars the claim for the same reasons that

---

[6] James does not suggest that any witness would be present to testify to cure the hearsay problem and to contradict Welborn. *See Lee v. Offshore Logistical & Trans., LLC*, No 16-31049, 2017 WL 2507740 (June 9, 2017). The deposition of St. Tammany detective Julie Downer reveals that she has no independent recollection whatsoever about AGW's case. (Defendants' Exhibit 2, Church deposition).

it bars the malicious prosecution claim. Defendants are entitled to summary judgment on the intentional infliction of emotional distress claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 82 *SEALED*)** filed by defendants Sam Woods and Stephanie Welborn is **GRANTED**. Plaintiff's complaint is **DISMISSED** with prejudice as to these defendants.

June 28, 2017

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE